**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**DAVID WATTS,**

**Plaintiff,**

**v.** **Case No. 24-CV-721**

**JOHN KIND,**

**Defendant.**

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Plaintiff David Watts, who is currently incarcerated at Columbia Correctional Institution and representing himself, brought this 42 U.S.C. § 1983 case, alleging that Defendant Green Bay Correctional Institution (GBCI) Security Director John Kind failed to accommodate his disability in violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). In particular, Watts claims that Security Director Kind did not allow Watts to use an elevator to reach the Health Services Unit for medical and physical therapy appointments.

On November 19, 2025, Security Director Kind filed a motion for sanctions, asserting that Watts submitted fabricated interview/information requests he claims to have made to the GBCI Warden in April, June, and July 2023, regarding his requests for disability accommodations, as well as a reasonable modification/accommodation request he claims to have sent to the ADA Coordinator in April 2023, in an attempt to defraud Security Director Kind and the Court. The Court held an evidentiary hearing on the motion on August 13, 2026. As explained more fully below, based on the evidence presented, the Court finds by clear and convincing evidence that Watts filed fraudulent requests and then lied about it under oath. The Court will therefore grant Security Director Kind's motion for sanctions.

## BACKGROUND

The requests that are the subject of Security Director Kind's motion for sanctions were purportedly submitted to the ADA Coordinator on April 26, 2023, and the GBCI Warden on April 26, June 4, and July 4, 2023. Watts' April 26, 2023, DOC-2530 reasonable modification/accommodation request to the ADA Coordinator provides:

> I request reasonable accommodation(s) to participate in a daily living activity, program and/or service indicated below.
>
> All of my daily life activities.
>
> I am limited in my ability to do the following (explain disability or limitation): getting in and out of bed, standing/moving around, walking, going up and down stairs.
>
> The following accommodation is being requested: elevator restriction, walker w/ seat, wheelchair for long distances.

Ex. 1031.

Watts' April 26, 2023, interview/information request to the GBCI Warden states:

> Tonight 4-26-2023 I've applied for "ADA" accommodations for the following disabilities (see: copy enclosed of DOC-2530 Reasonable Modification/Accommodations Request). I've no idea the name of the GBCI ADA Coord., so I addressed the sealed envelope to the GBCI ADA Coord.
>
> I wanted to make you aware of this cos as a safeguard so it cannot be said I did not apply for them since.
>
> CO Hoffman has been harassing me/messing w/ my mail. My disabilities are:
> 1. Fractured L4/L5 disc in spine
> 2. 5-½ lbs of missing leg muscle, nerves, tendons in left leg from "necrotizing fasciitis"
> 3. Dupuytren's contracture in palms of both hands
> 4. Bracial plexis tears in both trunk nerves in chest.

Ex. 1026. Watts' June 4, 2023, interview/information request states:

> This is <u>not</u> right and violates my ADA rights. I have qualifying ADA disabilities and the special needs committee still denied me ADA accommodations (see enclosed the 6-4-2023 notice of special needs committee decision). <u>Please</u> step in

> and help me by ordering an investigation into this matter and my need for accommodations. Please!

Ex. 1027. Watts' July 4, 2023, interview/information request states:

> Can you please step in and help me, by contacting Ms. Baier (AHSM) and Ms. Wochholz (APNP) on my disabilities and need for ADA accommodations, including but not limited to an elevator restriction, even if it's a temporary restriction, and contacting the special needs committee for permanent ADA accommodations. 1) I use a walker for mobility issues. 2) I have (2) fractured discs in my spine (L4/L5 disc). 3) 5-½ lbs of missing left leg muscle, nerves, tendons (from necrotizing fasciitis). 4) Dupuytren's contracture in palms of both hands. 5) Bracial plexis tears (trunk nerves) in both sides of my chest. *I've written you several times on this, asking for your help. The 1st time was the day I got to GBCI 4-26-2023. *Please help me.

Ex. 1028. For each request, only the inmate portion of the form is filled out. The bottom of the form, which is where the staff member to whom the form is addressed responds and signs his or her name, is blank. Nor is there any date stamp on any of the allegedly fraudulent request forms.

Watts asserts that although he submitted these requests on the dates shown, he never received a response from prison officials. Security Director Kind contends that Watts never submitted these requests at the times he claims. In other words, Security Director Kind claims Watts manufactured evidence in an attempt to defraud him and the Court.

**FINDINGS OF FACT**

The Court finds by clear and convincing evidence that the three interview/information requests and the DOC-2530 reasonable modification/accommodation request he filed with the Court were fake and created after the fact in response to Security Director Kind's motion for summary judgment and that Watts further lied about his conduct under oath during the evidentiary hearing in an attempt to avoid the consequences of his actions. I base this finding upon the testimony of Warden Christopher Stevens and Institution Unit Supervisor Michael Prebeg, whom I found to be credible witnesses, the documentary evidence admitted into evidence, as well as Watts' own testimony, which I find lacks credibility.

Watts was transferred to GBCI on April 26, 2023, and immediately placed in segregation in the Restrictive Housing Unit. Ex. 1021. He was in the Restrictive Housing Unit from April 26, 2023, to September 7, 2023. *Id.* Warden Stevens testified that inmates in the Restrictive Housing Unit are not allowed to have pens. Instead, they are provided a rubber pencil. Ex. 1022.

Warden Stevens described the process by which an inmate can submit an interview/information request to the Warden. If an inmate is in restrictive housing, as Watts was at all relevant times, the inmate submits a written request by placing the request in his cell door. The request is folded trifold, so that correctional officers and other inmates cannot see what is inside the inmate's request. Correctional officers collect the requests and place them in a mailbox. The Warden's secretary checks the mail Monday through Friday and date stamps each request on the day it is received. She then enters the request into the correspondence-tracking database system. Every request submitted to the Warden, the Deputy Warden, or the Security Director is scanned into the correspondence-tracking database. The Warden then responds to the request by writing a memo. The response memo is also scanned into the correspondence-tracking database and sent to the inmate along with a copy of the inmate's original request. Warden Stevens testified that the correspondence-tracking database did not contain any of the three interview/information requests dated April 26, 2023, June 4, 2023, and July 4, 2023, that Watts claims he sent to him.

Institution Unit Supervisor Prebeg explained the process to file a reasonable modification/accommodation request. An inmate must communicate with an ADA Coordinator or Health Services staff member regarding his accommodation need. The ADA Coordinator or Health Services staff member will then issue the inmate a DOC-2530 reasonable modification/accommodation request form. The request forms are saved in a centralized electronic folder. The original DOC-2530 form, a notation of who in health services was originally contacted about the accommodation request, and the decision on the request are all saved in the electronic

folder. Institution Unit Supervisor Prebeg testified that there was no record of Watts' April 26, 2023, request. However, the electronic folder did contain DOC-2530 reasonable modification/accommodation request forms that Watts submitted on October 7, 2011, and October 10, 2021, at other DOC institutions where he was previously in custody. Exs. 1029–30. For the 2011 request, Watts received a response and memo from the Health Services Manager on January 9, 2012. Ex. 1029 at 2. As for the 2021 request, Watts received notice that the request was received by the ADA Coordinator on October 25, 2021. Ex. 1030 at 1.

The DOC-2530 reasonable modification/accommodation request form is not one of the forms an inmate receives upon being admitted to the Restrictive Housing Unit. Ex. 1022 at 2. Institution Unit Supervisor Prebeg testified that DOC-2530 forms are not typically handed out on the day of an inmate's admission to GBCI and that only certain staff members have access to a blank DOC-2530 form. To obtain a DOC-2530 form, an inmate must generally send an information request for the form to the ADA Coordinator. It generally takes a minimum of four to five days to receive a response back from the ADA Coordinator. Watts' DOC-2530 reasonable modification/accommodation request form was dated April 26, 2023, the day he was transferred to GBCI and immediately placed in the Restrictive Housing Unit. Exs. 1021 & 1031. Institution Unit Supervisor Prebeg testified that it was not likely that an inmate would submit a DOC-2530 form on the same day as his arrival to the institution.

Watts offered a document that was identified as a response from the GBCI Special Needs Committee denying his request for an accommodation. Ex. 5. Institution Unit Supervisor Prebeg testified, however, that the Special Needs Committee did not address accommodations an inmate would need to participate in major life activities, but instead dealt with requests for alterations to alleviate temporary conditions such as back strains. As examples of the kind of alterations the Special Needs Committee might approve, he offered lower bunk restrictions or allowances for

extra pillows. For this reason and because Watts' Exhibit 5 was incomplete and did not include the request to which it was responding, Institution Unit Supervisor Prebeg testified he did not view it as a response to a reasonable accommodation request.

Watts maintains that he did submit the requests and suggests that correctional officers failed to place them in the appropriate mailbox. He testified that he arrived at GBCI at 11:30 on April 26, 2023, and was sent to the Restrictive Housing Unit, where he remained until September 7, 2023, when he was released into the general population. Notwithstanding the rule prohibiting inmates in segregation from possessing pens, Watts testified that while he was in the Restrictive Housing Unit, he asked for an ink pen and was given one by a correctional officer. He claims he eventually received seventeen pens from another officer and even received a conduct report for having pens while in segregation. Still, it seems unlikely he would use a pen while in segregation to communicate with the Warden and thereby openly violate the rule in making his request.

Watts testified that upon his arrival at GBCI he also asked for a DOC-2530 reasonable modification/accommodation request form and that a "white shirt" supervisor gave him the form the evening of April 26, 2023. Even though the GBCI Restrictive Housing Unit Handbook provides that an inmate being admitted to Restrictive Housing will receive "two Interview/Information Request slips," Ex. 1022 at 2, Watts testified that he received four information request forms upon being admitted to the Restrictive Housing Unit and that he obtained another two or three forms sometime that day. Watts asserted that he began filling out forms and requested to go to the law library. He also testified that a correctional officer began harassing him and messed with his mail as soon as he arrived at GBCI.

I do not find Watts' testimony credible because it is belied by the documentary evidence. Watts claims to have submitted four ADA-related requests when he was in segregation in the RHU: three to the Warden and one to the ADA Coordinator. None of the four requests were documented

in the correspondence-tracking databases maintained by the institution. In *Winston v. Kolbo*, Judge Peterson noted that "[a] single request might have been misplaced, but the chances of two requests getting misplaced are remote." No. 23-CV-9, 2025 WL 326563, at *2 (W.D. Wis. Jan. 29, 2025). The chances that four would be misplaced, one by a different recipient, is even more remote. Information requests are folded trifold so that the correctional officer who collects them to place them in the mail cannot see the contents of the request. The fact that requests are folded "reduces the chances that someone would attempt to intercept a particular request before it gets to the security director." *Id.*

Although Watts claims that correctional officers were tampering with his mail, he concedes that he submitted three interview/information requests to Warden Stevens while he was in the Restrictive Housing Unit that were unrelated to his ADA accommodation request and that were processed in the way that Warden Stevens described. It seems unlikely that the only requests that were either misplaced or mishandled happened to be those that relate to his ADA accommodation request, a key element of his claim in this case. Watts submitted his first non-ADA-related request on May 4, 2023, advising that he was on a hunger strike. Ex. 1023 at 1. Watts indicated on the request that his living unit was "seg cell 504." The request is addressed to "Mr. Stevens (Warden)" and appears to be written in pencil, notwithstanding his testimony that he had in his possession multiple pens while housed in the Restrictive Housing Unit. It is stamped received on May 5, 2023, and Warden Stevens responded by written memo that same day. *Id.* at 1, 3. Watts submitted the second non-ADA-related request on June 16, 2023, complaining about Prison Rape Elimination Act issues. Ex. 1024 at 1–4. Watts indicated on the request that his living unit was "RHU cell 504" and addressed the request to "Mr. Stevens (Warden)." *Id.* at 1. The request also appears to be written in pencil. The request is stamped received on June 19, 2023, and Warden Stevens responded to the request by written memo that same day. *Id.* at 1, 5. Watts submitted the

third non-ADA-related request on July 1, 2023, complaining about harassment and retaliation. Ex. 1025 at 1–5. Watts again indicated on the request that his living unit was "RHU cell 504" and addressed the request to "Mr. Stevens (Warden)." *Id.* at 1. The request again appears to be written in pencil. The request is stamped received on July 5, 2023, and Warden Stevens responded to the request by written memo on July 11, 2023. *Id.* at 1, 7.

Even though the four ADA-related requests at issue are dated to indicate they were created in the same timeframe as the three non-ADA-related requests received by the Warden, there are significant differences, suggesting Watts created the ADA-related requests when he was no longer housed at GBCI. (He was transferred from GBCI in January 2024.) As an initial matter, all four of the ADA-related-requests at issue are written in pen, which inmates in segregation were not allowed, whereas the three non-ADA-related requests received by the Warden are written in pencil, suggesting he was in segregation at the time. In addition, whereas the three non-ADA-related requests received by the Warden include Watts' cell number, in the ADA-related requests dated April 26, 2023, June 4, 2023, and July 4, 2023, Watts wrote that his living unit was "GBCI RHU" or simply "GBCI" generally, suggesting they were written at a time he could no longer recall which cell he was in on the dates shown on the requests. *See* Exs. 1026 at 1; 1027 at 1; 1028 at 1. Watts addressed the three non-ADA-related requests received by Warden Stevens to "Mr. Stevens (Warden)." But he included in the ADA-related requests dated April 26, 2023, June 4, 2023, and July 4, 2023, the notation that Mr. Stevens was the Warden at GBCI, suggesting he was no longer housed at GBCI at the time he wrote them. *See* Ex. 1026 at 1 ("Mr. Christopher Stevens (Warden - ***GBCI***)" (emphasis added)); Ex. 1027 at 1 ("Mr. Stevens (Warden ***- GBCI***)" (emphasis added)); Ex. 1028 at 1 ("Mr. Stevens (Warden ***- GBCI***)" (emphasis added)).

Even more persuasive is the fact that on the three ADA-related requests to Warden Stevens and the DOC-2530 reasonable modification/accommodation request form, Watts wrote on the

bottom "<u>cc: file</u>." Exs. 1026 at 3; 1027 at 1; 1028 at 1; 1031 at 1. Watts testified that this notation meant they were carbon copies of the requests he claims he sent. (After all, the original request forms had not been returned to him with the response.) The three non-ADA-related requests received by the Warden do not include "cc: file." In other words, Watts claims to have made carbon copies of only those requests that he now claims were lost or mishandled, as if he knew ahead of time which requests would be misplaced or mishandled. This makes no sense, and Watts' explanation that he forgot to copy or include "cc: file" on the three requests received by the Warden is not credible.

Finally, I note that Watts has a strong motive to manufacture evidence in support of his claim and to lie about it. According to his complaint, he is seeking $125,000 in compensatory damages and $250,000 in punitive damages. Dkt. No. 1 at 6. I also note that Watts has been found to have fabricated evidence in court proceedings in the Western District of Wisconsin, *see Watts v. Kartman*, No. 21-cv-708 (W.D. Wis. Apr. 19, 2023), Dkt. No. 59. I conclude, however, that such evidence is inadmissible under Federal Rule of Evidence 404(b)(2), and therefore have given the finding in that case no weight.

For these reasons and based upon the evidence presented at the evidentiary hearing, I find that Watts manufactured false evidence in the form of three interview/information requests and the reasonable modification/accommodation request and filed them with the Court in an attempt to defraud the Court and Security Director Kind. I also find that he lied about the fabricated evidence under oath. I now turn to the question of an appropriate remedy.

## REMEDY

The Court has the inherent power to sanction a party's misconduct. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 789 (7th Cir. 2009). "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process

or otherwise conducted litigation in bad faith." *Id.* "A litigant's misconduct can justify default judgment . . . and perjury is among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)). "Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case." *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003); *see also Jackson v. Murphy*, 468 F. App'x 616, 620 (7th Cir. 2012) (finding sanction of dismissal was "entirely warranted" where plaintiff perjured himself and forged a critical document to support his case). The Court finds that Watts fabricated allegations and evidence in this case.

While the Court must consider whether lesser sanctions would be appropriate before dismissing a case, the Court concludes that such sanctions would not be proper or effective here. As an initial matter, though a fine is ordinarily an appropriate lesser sanction, "[m]onetary sanctions are generally not as effective against a pro se plaintiff proceeding as a pauper." *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011). In addition, merely excluding the fabricated requests and any allegations related to them may not effectively deter Watts or other prisoners from engaging in similar conduct in future cases. Manufacturing evidence undermines the essential truth-finding function of the justice system, puts the system through unnecessary work, and causes the defendants unnecessary expense and delay. *Rivera*, 767 F.3d at 686.

In this case, the over-100 docket entries reflect the amount of time and resources, both those of the State of Wisconsin and the Court, that have been expended in responding to Watts' manufactured claim. Two correctional officers were required to escort Watts to the hearing and an assistant attorney general for the Wisconsin Department of Justice and Security Director Kind, as well as Warden Stevens and Institution Unit Supervisor Prebeg, were required to devote time

and effort in defending against Watts' claim. While this is enough to dismiss Watts' case with prejudice, I have also considered the merits of his claim.

Watts asserts that Security Director Kind failed to accommodate his disability in violation of the ADA and RA. To succeed on his claims, Watts must demonstrate that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citation omitted). At issue here is whether Watts was denied the benefits of a service or program on account of his disability. Watts claims that Security Director Kind did not allow Watts to use an elevator to reach the Health Services Unit for medical and physical therapy appointments. But Watts has presented no evidence that he missed any medical or physical therapy appointment because of his inability to use the stairs leading to the Health Services Unit. When Watts finally did make a request for accommodation in December 2023, it was granted in January 2024. Yet, he filed suit five months later claiming, on the basis of evidence now shown to have been fabricated, that his request had been unreasonably denied. This is not a case in which dismissal will result in the loss of a meritorious and substantial claim.

In sum, Watts' conduct in fabricating evidence in an effort to create a cause of action out of whole cloth, subvert justice, and defraud Security Director Kind demonstrates that he has no respect for the integrity of the judicial process. Watts' conduct is inexcusable and will not be tolerated. For these reasons, to ensure that Watts does not trample on the integrity of the Court any further, the Court begins by dismissing the case with prejudice as a sanction for Watts' dishonesty. But more severe sanctions are warranted.

Watts was warned by Judge Conley in the Western District of Wisconsin that "if his abusive filings continue in any other proceeding before the court, he will be subject to further sanctions, including a filing bar similar to that contemplated by § 1915(g)." Dkt. No. 59 at 8.

Watts did not heed the warning. Although he may have fabricated the evidence in this case before Judge Conley issued his warning, he persisted in his fraud thereafter, including in his testimony before this Court. The Court will therefore issue a filing bar that prevents Watts from litigating civil rights lawsuits for a period of two years. *See Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995). If Watts submits documents to the Court during this two-year period, they will be returned to him, unfiled. The only exceptions to this prohibition are as follows: Watts may file habeas corpus petitions relating to his criminal convictions or documents related to a pending criminal action in which Watts is a defendant. Watts may also file a civil action in the event he is in imminent danger of serious physical injury.

Finally, sections 1915(e)(2) and 1915A require that the Court dismiss a complaint at any time it determines that the complaint is frivolous, malicious, or fails to state a claim. 28 U.S.C. §§ 1915(e)(2); 1915A. A prison inmate who files a complaint that is dismissed on such grounds is awarded a strike and, upon accumulating three such strikes, is barred from bringing further civil actions unless the prisoner is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). It is hard to conceive of misconduct more malicious than fabricating allegations and evidence with the goal of either harassing or obtaining a judgment against a correctional officer or staff member. Watts has manufactured evidence to defraud the Court, Security Director Kind, and ultimately, the taxpayers of the State of Wisconsin. His fraudulent behavior has resulted in the Court diverting significant time and resources from legitimate cases awaiting judicial attention. As such, the Court finds that Watts must also be assessed a strike under 28 U.S.C. § 1915(g). *See Goodvine v. Vandewalle*, No. 16-C-890, 2018 WL 460121 (E.D. Wis. Jan. 23, 2018); *Carter v. Waterman*, No. 14-cv-399, 2016 WL 407331 (W.D. Wis. Feb. 2, 2016); *Lindsey v. Brown*, No. 13-cv-68, 2013 WL 5148347 (S.D. Ind. Sept. 11, 2013).

## CONCLUSION

For the reasons set forth above, Security Director Kind's motion for sanctions (Dkt. No. 52) is **GRANTED**. Security Director Kind's motion for summary judgment (Dkt. No. 31) and Watts' motion to supplement (Dkt. No. 51) are **DENIED as moot**. This case is dismissed with prejudice. Watts is assessed a strike under 28 U.S.C. § 1915(g). The Clerk is directed to enter judgment accordingly.

For the next two years, the Clerk of Court shall return to Watts, unfiled, any further papers that Watts attempts to file, except for a petition for a writ of habeas corpus, a document related to a pending criminal action in which Watts is a defendant, or he is in imminent danger of serious physical injury. Finally, a copy of this decision will be sent to the United States Attorney, who may wish to prosecute Watts for the crime of perjury. *See Rivera*, 767 F.3d at 687 (citing 18 U.S.C. § 1621).

**SO ORDERED** at Green Bay, Wisconsin this 17th day of August, 2026.

William C. Griesbach
United States District Judge